UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                )
RICHARD J. BUBA, et al.,        )
                                )
                Plaintiffs,     )
                                )
v.                              )        Civil Action
                                )        No. 16-10421-PBS
DEUTSCHE BANK NATIONAL TRUST     )
COMPANY AMERICAS, et al.,        )
                                )
                Defendants.     )
_____ )
```

**MEMORANDUM AND ORDER**

May 6, 2016

Saris, C.J.

**INTRODUCTION**

Plaintiffs Richard and Eugenia Buba ("Bubas") sued Defendants Nationstar Mortgage, LLC ("Nationstar"), and Deutsche Bank National Trust Company Americas, as Trustee for Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QH4 ("Deutsche Bank"), alleging four counts: (1) wrongful foreclosure, (2) breach of contract, (3) negligence, and (4) wrongful foreclosure in violation of M.G.L. ch. 244, §§ 14-17 & 35A and M.G.L. ch. 183, § 21. Defendants moved to dismiss the second amended complaint on the ground that the issues are precluded by an earlier adverse ruling in state court. After hearing, the Court **ALLOWS** the defendants' Motion to Dismiss (Docket No. 5).

1

## FACTUAL BACKGROUND

Allegations in the second amended complaint, and the attachments, are taken as true for purposes of this motion to dismiss. The Court also takes judicial notice of prior court proceedings, public records, and documents referenced in the complaint.

The plaintiffs are former owners and residents of the property at 358 Salem Street, Andover, Massachusetts. The Bubas purchased the property in December 1986. On February 16, 2007, the Bubas executed a mortgage on the property in exchange for $725,000. GN Mortgage, LLC, was the lender and Mortgage Electronic Registration Systems, Inc. ("MERS"), served as the lender's nominee. On February 5, 2011, MERS assigned the mortgage to Aurora Bank FSB ("Aurora").

On October 20, 2011, Aurora sent the Bubas a notice via certified mail that the loan was in default due to an overdue balance. Docket No. 6, Ex. 1 at 1-3. The letter informed the plaintiffs of their right to cure the default within 150 days and the amount required to cure—the overdue balance of $10,531.68.

On June 28, 2012, Aurora assigned the mortgage to defendant Nationstar. Nationstar assigned the mortgage to Deutsche Bank. On September 5, 2013, Nationstar, as servicer on behalf of Deutsche Bank, sent a second default notice to the Bubas. Docket

2

No. 6, Ex. 2 at 1-3. This letter informed the Bubas that their overdue balance had ballooned to $99,769.64.

After both Aurora and Nationstar filed complaints to determine the military status the Bubas, on July 17, 2014, the Land Court entered judgment permitting Nationstar to commence with the sale of the property. On December 5, 2014, Nationstar recorded an affidavit certifying that it had taken reasonable steps and made a good faith effort to avoid foreclosure—as required by M.G.L. ch. 244, § 35B—and that it was the authorized agent of the holder of the promissory note secured by the mortgage—as required by M.G.L. ch. 244, § 35C. Thereafter, Nationstar published a notice of sale in the Lawrence Eagle-Tribune. Docket No. 6, Ex. 4 at 5. This notice ran weekly for three consecutive weeks, beginning with the December 30, 2014 issue. Id. On January 20, 2015, Nationstar held a public auction and sold the property to itself as the highest bidder for $791,296.50. Docket No. 6, Ex. 4 at 4. As the servicer for the note held by Deutsche Bank, Nationstar then assigned its successful bid to Deutsche Bank. Deutsche Bank then sold the property on or about May 4, 2015, to Roger Bourk and Anita Santos ("Bourk and Santos") for $630,000.

The Bubas did not vacate the property. Subsequently, Bourk and Santos filed a summary process action against the Bubas in the Lawrence District Court seeking possession of the property

and damages for use and occupancy. On June 29, 2015, the Bubas filed an answer and counterclaimed, alleging that Nationstar was not the noteholder of record at the time of the foreclosure and did not have the right to foreclose, and that Nationstar failed to properly review the Bubas for a loan modification to avoid foreclosure.

Specifically, the Bubas alleged in their answer that the foreclosure was void and brought additional counterclaims: wrongful foreclosure, void foreclosure because of M.G.L. ch. 93A violations by Nationstar, and intentional infliction of emotional distress, which the Bubas asserted resulted after Bourk and Santos purportedly attempted to self-evict the Bubas. On August 14, 2015, the Bubas filed an amended answer alleging that Nationstar was neither the holder nor the agent of the holder at the time of the foreclosure, and that for this reason, the foreclosure was invalid. On September 18, 2015, for the first time, the Bubas challenged the adequacy of the default notice, alleging that it did not strictly comply with paragraph 22 of the mortgage as required by the Massachusetts Supreme Judicial Court in the recent case of Pinti v. Emigrant Mortg. Co., Inc., 33 N.E.3d 1213 (Mass. 2015).

Bourk and Santos filed a motion for summary judgment. They argued, among other things, that Massachusetts bars the Bubas' counterclaims against third party purchasers for value. See

4

M.G.L. ch. 244, § 35B(f).[1] Summary judgment was granted in favor

of Bourk and Santos on December 1, 2015, by the Honorable Mark

A. Sullivan of the Lawrence District Court. With respect to the

default notice, the court found that "Nationstar complied with

the requirements of M.G.L. ch. 244, § 35A." Docket No. 6, Ex. 9

at 4-5. As to the claim that the defendants had not properly

reviewed the Bubas for a loan modification, the court rejected

the Bubas' argument, stating that under M.G.L. ch. 244, § 35B(f)

"plaintiffs cannot be liable for any alleged noncompliance by

Nationstar" on this issue. Id. at 5. With regard to the adequacy

of the default notice provisions in paragraph 22, the court

declined to retroactively apply Pinti, which found that failure

---

[1] "Prior to publishing a notice of a foreclosure sale, as
required by section 14, the creditor, or if the creditor is not
a natural person, an officer or duly authorized agent of the
creditor, shall certify compliance with this section in an
affidavit based upon a review of the creditor's business
records. The creditor, or an officer or duly authorized agent of
the creditor, shall record this affidavit with the registry of
deeds for the county or district where the land lies. The
affidavit certifying compliance with this section shall be
conclusive evidence in favor of an arm's-length third party
purchaser for value, at or subsequent to the resulting
foreclosure sale, that the creditor has fully complied with this
section and the mortgagee is entitled to proceed with
foreclosure of the subject mortgage under the power of sale
contained in the mortgage and any 1 or more of the foreclosure
procedures authorized in this chapter; provided, that the arm's-
length third party purchaser for value relying on such affidavit
shall not be liable for any failure of the foreclosing party to
comply and title to the real property thereby acquired shall not
be set aside on account of such failure." M.G.L. ch. 244,
§ 35B(f).

to strictly comply with the terms in paragraph 22 rendered a foreclosure invalid. Id. at 5-6.

The Bubas moved for reconsideration of this decision on January 25, 2016. Docket No. 6, Ex. 6 at 5. On February 1, 2016, Judge Sullivan denied this motion. Id. The Bubas filed an appeal on February 10, 2016. Id. The appeal was dismissed on March 1, 2016. Id. at 6. On August 10, 2015, the Bubas filed a complaint in the Massachusetts Superior Court, Essex County.[2] On February 29, 2016, the defendants removed pursuant to diversity jurisdiction under 28 U.S.C. §§ 1332, 1441 & 1446.

## DISCUSSION

### I.   Standard of Review

In order to survive a Rule 12(b)(6) motion to dismiss, the factual allegations in a complaint must "possess enough heft" to state a claim for relief that is facially plausible. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

---

[2] The initial state court complaint included claims against Bourk and Santos. On February 11, 2016, before the present defendants removed the case, the state court dismissed Bourk and Santos with prejudice. See Docket No. 6, Ex. 10 at 4.

"An affirmative defense may be adjudicated on a motion to dismiss for failure to state a claim." In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003). "The affirmative defense of res judicata is no exception." Id. In considering the affirmative defense of issue preclusion, "the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences" in favor of the nonmovant. R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).

Generally, a court reviewing a 12(b)(6) motion must limit itself to "facts and documents that are part of or incorporated into the complaint." Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008). However, "a district court may also consider 'documents incorporated by reference in the complaint, matters of public record, and other matters susceptible to judicial notice.'" Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d at 20) (alterations omitted); see also Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) ("[C]ourts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."). "Matters of public record ordinarily include documents from prior state court

7

adjudications." <u>Giragosian</u>, 547 F.3d at 66 (internal citation and quotation marks omitted).

## II.  **Issue Preclusion**

Defendants argue that the plaintiffs' claims are barred by the doctrine of issue preclusion. Federal courts have a "duty to give full faith and credit to judgments of the state court." <u>Wayside Transp. Co. v. Marcell's Motor Exp., Inc.</u>, 284 F.2d 868, 870-71 (1st Cir. 1960). "The reach of a prior state court judgment is determined by state law." <u>N.H. Motor Transp. Ass'n v. Town of Plaistow</u>, 67 F.3d 326, 328 (1st Cir. 1995). Broadly, issue preclusion "prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim." <u>Heacock v. Heacock</u>, 520 N.E.2d 151, 152 n.2 (Mass. 1988).

Under Massachusetts law, issue preclusion only applies if the Court affirmatively answers four questions:

> (1) Was there a final judgment on the merits in the prior adjudication; (2) was the party against whom estoppel is asserted a party (or in privity with a party) to the prior adjudication; (3) was the issue decided in the prior adjudication identical with the one presented in the action in question; and (4) was the issue decided in the prior adjudication essential to the judgment in the prior adjudication?

<u>Alba v. Raytheon Co.</u>, 809 N.E.2d 516, 521 (Mass. 2004). The key issue behind applying issue preclusion is "whether defendants 'received a full and fair opportunity to litigate their claims'"

in an earlier proceeding. <u>Acevedo-Garcia v. Monroig</u>, 351 F.3d
547, 575 (1st Cir. 2003) (quoting <u>Parklane Hosiery Co. v. Shore</u>,
439 U.S. 322, 332 (1979)). An issue is actually litigated if
"logically or practically, a necessary component of the decision
[was] reached in the prior litigation." <u>Grella v. Salem Five
Cent Sav. Bank</u>, 42 F.3d 26, 31 (1st Cir. 1994). <u>See generally</u>
Restatement (Second) of Judgments § 27 (1982) ("When an issue of
fact or law is actually litigated and determined by a valid and
final judgment, and the determination is essential to the
judgment, the determination is conclusive in a subsequent action
between the parties, whether as the same or a different
claim.").

    With respect to the first prong of the preclusion test, the
Lawrence District Court's summary judgment ruling in the summary
process action in state court was a final judgment on the
merits. <u>See</u> <u>Jarosz v. Palmer</u>, 766 N.E.2d 482, 489 (Mass. 2002)
("[T]he term 'judgment' refers to a final determination on the
merits of the proceeding.").

    Second, with respect to the identity of the parties, the
Bubas were parties to the summary process action brought by
Bourk and Santos. The defendants were not parties at the earlier
adjudication, but their presence is not required in order for
issue preclusion to apply. <u>Miles v. Aetna Cas. & Sur. Co.</u>, 589
N.E. 2d 314, 317 (Mass. 1992) ("[O]ne not a party to the first

action may use a judgment in that action defensively against a party who was a plaintiff in the first action on the issues which the judgment decided.").

The third prong considers whether "the issue sought to be precluded is the same as that which was involved in the prior proceeding." Faigin v. Kelly, 184 F.3d 67, 78 (1st Cir. 1999). Issue preclusion "can apply where the subsequent proceeding involves a cause of action different from the first." Manganella v. Evanston Ins. Co., 700 F.3d 585, 591 (1st Cir. 2012) (citing Comm'r v. Sunnen, 333 U.S. 591, 601 (1948)). "Even if there is a lack of total identity between the issues involved in two adjudications, the overlap may be so substantial that preclusion is plainly appropriate." Comm'r of Dept. of Emp't & Training v. Dugan, 697 N.E. 2d 533, 537 (Mass. 1998).

Plaintiffs argue that their claims are not barred because the Lawrence District Court's "core consideration in the summary process proceeding" was M.G.L. ch. 244, § 35B(f), a provision that the defendants—unlike the third party purchasers—cannot rely on to avoid liability. Docket No. 11 at 5. Section 35B requires that a mortgagee not cause publication of notice of a foreclosure sale "unless it has first taken reasonable steps and made a good faith effort to avoid foreclosure." Olabode v. Caliber Home Loans, Inc., No. 15-CV-10146-ADB, 2015 WL 4111439, at *2 n.3 (D. Mass. July 8, 2015) (quoting M.G.L. ch. 244,

10

§ 35B(b)). Under § 35B(f), third party purchasers are not liable for the mortgagee's failure to comply with § 35B so long as the mortgagee filed an affidavit certifying compliance with that section and the third party purchasers relied on the affidavit. Id. at § 35B(f). Nationstar executed the requisite § 35B(f) affidavit, certifying that it had taken reasonable steps and made good faith efforts to avoid foreclosure. See Docket No. 6, Ex. 3. As a result, the Lawrence District Court found that Bourk and Santos, as the third party purchasers, were not liable for any failure of Nationstar to comply with the requirements of § 35B. See Docket No. 6, Ex. 9 at 5 (citing M.G.L. ch. 244, § 35B(f)).

In their opposition to the defendants' motion to dismiss, the plaintiffs allege that, because the Lawrence District Court rested its decision (in part) on the § 35B(f) affidavit, the claims raised here have not been adjudicated, at least not with respect to the present defendants. The plaintiffs emphasize that the § 35B(f) affidavit does not serve to insulate the defendants, even if it did shield Bourk and Santos from liability in the state court action.

The plaintiffs reliance on § 35B(f) does not save them from a finding that the claims it presses here are precluded. First, § 35B(f) affidavits only protect a third party purchaser with respect to noncompliance with the requirements of § 35B. See

§ 35B(f). Because the Bubas' counterclaims in the Lawrence
District Court proceeding raised other issues—such as compliance
with § 35A and paragraph 22—the Lawrence District Court's
decision could not, and did not, rest solely on the existence of
the § 35B(f) affidavit. See Docket No. 6, Ex. 9 at 4-6. It is
those additional issues adjudicated by the Lawrence District
Court that the Bubas seek to relitigate here. Second, the Bubas,
in this suit, do not allege noncompliance with § 35B. See Docket
No. 1, Ex. 3. So while a § 35B(f) affidavit does "not relieve
the affiant, or other person on whose behalf the affidavit is
executed, from liability for failure to comply with [§ 35B],"
that provision does not apply to claims alleging violations of
other sections. M.G.L. ch. 244, § 35B(f).

Of the four counts in the present action, three of them
raise the identical challenge to the adequacy of the notice
under paragraph 22 of the mortgage presented in the state court
action. Count I is a wrongful foreclosure claim alleging that
Nationstar and Deutsche Bank foreclosed on the property "in
violation of Paragraph 22 of the subject mortgage and contrary
to the provisions of M.G.L. c. 183, § 21." Docket No. 1, Ex. 3
at 5, ¶ 32. Plaintiffs allege that the notices violated
paragraph 22 because they failed to inform the plaintiffs of
their right "to bring a court action to assert the non-existence
of a default or any other defense of borrower to acceleration

12

and sale." Id. at ¶ 34. Count II is a breach of contract claim that also alleges non-compliance with paragraph 22 of the mortgage as well as statutory violations of M.G.L. ch. 244, § 14 and ch. 183, § 21. Count III alleges the defendants were negligent by failing to give proper notice of default as set forth in the mortgage.

The challenge to the validity of the notices was rejected in the summary judgment ruling for Bourk and Santos, where the district court found "that the notice of default, signed for by Mr. Buba on October 25, 2011, complied with paragraph 22 of the mortgage." Docket No. 6, Ex. 9 at 2. While the notice may not have been compliant post-Pinti, the district court correctly noted that strict compliance under Pinti was not required. The notices of default—the first mailed in October 2011 and the second mailed in September 2013—were sent prior to the Pinti decision and the Supreme Judicial Court gave the decision "prospective effect only." Pinti, 33 N.E.3d at 1227. Nor was the case on appeal at the time Pinti was decided. Aurora Loan Servs., LLC v. Murphy, 41 N.E.3d 751, 755 (Mass. App. Ct. 2015).

Count IV raises a wrongful foreclosure claim in violation of M.G.L. ch. 244, § 14 and M.G.L. ch. 183, § 21, alleging that a broken chain of title rendered the foreclosure null and void. While it is not clear exactly what link in the chain is broken, the Bubas raised the issue of title in the state court

proceedings. Under Massachusetts law, the time to bring any

claim challenging the validity of title is at the summary

process action:

> "[A] mortgagor owner, faced with eviction in a summary
> process action commenced following mortgage foreclosure,
> has the full opportunity needed to raise, as a defense
> in the summary process case, challenges to the mortgage
> foreclosure, and to the validity of the title which the
> foreclosure sale and deed yielded. Deferral of these
> questions, holding them in reserve for another day in
> another court, is not an acceptable tactic for the
> mortgagor to employ, at least without some clear
> understanding on the part of all the summary process
> parties that reserves until later the question of the
> title following the foreclosure. [After bank
> foreclosure], the mortgagor who has knowledge of legal
> grounds why that foreclosure did not establish title in
> the grantee under the foreclosure deed, is bound to raise
> and pursue these legal grounds then, in the summary
> process forum. The failure to do so will preclude later
> litigation on these questions, which are fundamental
> elements of the case for possession."

Solomont v. Howe Real Estate Advisors, LLC, No. 11 MISC. 448092

(GHP), 2011 WL 4483960, at *11 (Mass. Land Ct. Sept. 28, 2011)

(emphasis added). "The purpose of summary process is to enable

the holder of legal title to gain possession of premises

wrongfully withheld." Bank of N.Y. v. Bailey, 951 N.E.2d 331,

335 (Mass. 2011) (quoting Wayne Inv. Corp. v. Abbott, 215 N.E.2d

795, 795 (Mass. 1966)). "Right to possession must be shown and

legal title may be put in issue . . . . Legal title is

established in summary process by proof that the title was

acquired strictly according to the power of sale provided in the

mortgage." Id. "By entering a judgment for [plaintiff] in the

summary process action, the Housing Court <u>necessarily</u>
determine[s] that the [bank] had properly foreclosed and was
entitled to possession of the Property." <u>Wenzel v. Sand Canyon
Corp.</u>, 841 F. Supp. 2d 463, 481 (D. Mass. 2012) (emphasis
added), <u>abrogated on other grounds by</u> <u>Culhane v. Aurora Loan
Servs. of Neb.</u>, 708 F.3d 282 (1st Cir. 2013). "Having had the
opportunity to dispute the validity of [the bank's] authority to
foreclose in the summary process action, the [parties] are now
barred from relitigating those claims." <u>Id.</u>

    During the summary process action, the Bubas' counterclaim
alleged, "Nationstar foreclosed the subject mortgage without
right to do so since it only held the mortgage but not the note
at the time it conducted the subject foreclosure." Docket No. 6,
Ex. 8 at 6. However, the district court did not find any defect
in the title. The court stated that Nationstar recorded an
"Eaton" affidavit certifying that it was "the authorized agent
of the holder of the promissory note secured by the subject
mortgage." Docket No. 6, Ex. 9 at 3. The court also found that
"[a]ttached to the foreclosure deed was an affidavit in which
Nationstar certified that it complied with all foreclosure
notices required by law . . . including the chain of assignments
of the subject mortgage from MERS to Nationstar." <u>Id.</u> Finally,
the district court found that, on April 16, 2015, after the
foreclosure, Nationstar recorded an additional "Eaton" affidavit

in compliance with M.G.L. ch. 244, §§ 35B & 35C, which attested that Nationstar was the "authorized agent of the mortgage note holder throughout the foreclosure process." Id. at 4. These findings dispose of the broken chain of title issue. "The determination of title in a prior proceeding will, in appropriate cases, bar a new litigation attempt to adjudicate title again in a fresh action." Solomont, 2011 WL 4483960, at *8.

Finally, the fourth prong of the issue preclusion test is met. "For a ruling to have preclusive effect, it must have a bearing on the outcome of the case." Jarosz, 766 N.E.2d at 489 (quoting Restatement (Second) of Judgments § 27 cmt. h (1982)) (internal quotation marks omitted). Judge Sullivan's finding that the sale was valid was a prerequisite to ordering the Bubas to vacate. See U.S. Bank Nat'l Ass'n v. Schumacher, 5 N.E.3d 882, 888 (Mass. 2014) (finding that the issue before a court in a summary process action where the defense is a claim of wrongful foreclosure challenging the plaintiff's entitlement to the property, "is whether the mortgagee obtained title in strict accordance with the power of sale").

As all four counts are precluded under the doctrine of issue preclusion, the plaintiff's claims are dismissed.

## ORDER

The Court **ALLOWS** the defendant's Motion to Dismiss the plaintiff's claims (Docket No. 5).

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge